### Case No. 6,395.

#### HERBERT et al. v. The AMANDA F. MYRICK.

[1 Betts, D. C. MS. 32.]

District Court, S. D. New York. July 1, 1840.

SEAMEN—LIBEL FOR WAGES.

[A libel by seamen against a vessel, for wages, cannot be sustained where it appears that they failed to present their claims at the time other seamen libelled the vessel, and delayed their libel for many months, though the vessel was repeatedly in port, and her owner had advertised for claims against her, where such claims were supported only by the testimony of a former owner and master, who had previously declared that there were no liens against the vessel, and had threatened injury to the purchasers.]

[This was a libel in rem by Herbert, Tice, and Marvin against the schooner Amanda F. Myrick (Bishop and others, claimants) for wages.]

BETTS, District Judge. Herbert was mate, and Tice and Marvin, seamen, on board the schooner, when she was owned and commanded by Perry. Herbert alleges that he entered on board the 5th of September, 1838, and continued to the 29th day of

July, 1839, at the wages of $25 per month; Tice, that he engaged as steward, and served from Dec. 23. 1838, to April 12, 1839, at $20 per month. Marvin comes into the cause by petition, after the action has been commenced, claiming wages at the rate of $18 per month from December 6th, 1838, to February 19, 1839. The claimants purchased the schooner in the city of New York in May last, and in their claim and answer they aver they purchased bona fide without any knowledge of the libellants' demand against her, and believing there was no existing lien for wages against the vessel. They also allege that the vessel had been repeatedly in New York, to the knowledge of the libellants, since they were discharged from her, and at one time for a period of two months, and they never presented any claim for wages, and that though they knew of her sale, and the purchase by claimants, they did not make known their demands. The libellants' demands are supported by the testimony of the former master, Perry, who testifies that there was due Herbert over $100 when he left the vessel; to Tice, about $60; and to Marvin, above $30.

Independent of this evidence, the presumption, after such lapse of time, that the libellants had received their wages, would be so strong as to defeat their lien upon mere proof of services rendered, especially connected with their suffering a sale·to be made of the vessel without any intimation of their claim upon her. To this is to be added the further circumstance that the vessel was arrested in Philadelphia by some of the crew, who served with the libellants and immediately following her return to the United States after the discharge of the libellants, and those wages were recovered, without the libellants uniting in the suit, or making known at the time the existence of any indebtedness to them. It is true, there is no direct evidence of their being in Philadelphia at the time, but the circumstances afford a strong presumption that they were cognizant of those proceedings. It is not intended to discuss the question whether seamen knowing of a suit in prosecution by part of the crew for the recovery of wages lose all remedy for their own wages on that voyage if they omit to join in such suit, but, at least, if their neglect does not amount to a bar to any after suit brought by them, it would be equitably a waiver of the lien on the vessel in the hands of a subsequent owner. It is strictly so if the vessel is sold under such proofs. Trump v. The Thomas [Case No. 14,206]; and it would well justify, in favor of any other purchaser, an implication of the waiver, if, knowing the proceedings to be afoot, in behalf of their fellows, the libellants did not interpose to prevent the discharge of the vessel until their wages, also, should be satisfied. Neither lapse of time, nor neglect to enforce a claim of wages with reasonable diligence,

will necessarily be regarded as a bar to the lien of seamen, even where there has been a change of ownership. The Mary [Id. 9,186]. But they furnish reasons from which the court may justly infer that the privilege is waived, and a sailor, equally with all other suitors, will be prohibited using his privilege in a way to work a fraud upon innocent parties.

It is not, however, intended to place the decision of the cause upon any direct or implied waiver of the lien on the part of the libellants, inasmuch as the testimony of Capt. Perry, upon which their recovery must depend, is so far impeached and contradicted as not to justify rendering a decree upon his statements. He was owner of the vessel when the services of the libellants were rendered. Having become embarrassed, he conveyed her to Pratt Bros. & Co. to secure advances made in her behalf by them, with an understanding that she should be sold, and after their debt was satisfied the balance should come to him. He was put out of command as master, and Capt. Jolim was appointed in his place, but he was retained on board as chief mate. When the purchase of the claimants was under negotiations, and frequently at other times, Capt. Perry said there were no liens on the vessel, or claims against her. He had before told Capt. Jolim that he had been obliged to pay Tice his full wages, though unable to earn them, and had borrowed $15 of Capt. Jolim to pay off Herbert, as he then said. Herbert came on board, and Perry said he owed him that sum. Jolim lent it to him at the time, and for that purpose. It was furthermore proved that Perry made threats of injury to the purchasers immediately on the sale of the vessel, and said he would at least make her pay his wages, and that he had been to the office of the proctors to see what could be done. Immediately after these declarations, the suit was commenced. If these facts and circumstances do not establish affirmatively that the suit is prosecuted at the instigation of Capt. Perry, and for his benefit, they, at all events, contradict and impugn the evidence he now gives to support the action, in its material and vital part, because they show that either his plain and direct assertions with respect to the indebtedness of the vessel to Herbert or Tice, or his testimony now in court, one or the other, must be false. The declarations have a stronger relation to the probabilities of the case than the testimony, for it is difficult to believe that these seamen, both poor and out of health, would let a demand of $163 stand unsued for and unclaimer for more than a year, and that when it was well known where the vessel or owners might be reached, and when, also, it appears notice had been long published for all claims against the vessel to be brought in for adjustment to Pratt Bros. & Co. It would be most unsafe, upon the evidence of

a vexed and menacing witness, to sustain and give effect to demands preferred under such circumstances. I shall accordingly decree against these claims, so far as respects the vessel, leaving the libellants to seek their remedy at law against Capt. Perry, if there is, in truth, any just demand in their favor unsatisfied by him.

Let the proper decree be accordingly entered, discharging the vessel from this suit, with costs, without prejudice, however, to any action in personam in this court, or at law, which the libellants may be advised to prosecute for the same cause.